# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ORLANDO COMMUNICATIONS LLC,**

      **Plaintiff,**

v.

Case No: 6:14-cv-1017-Orl-22KRS
(and consolidated cases)

**CELLCO PARTNERSHIP, et al.,**

      **Defendants.**

_____/

## ORDER

This cause comes before the Court on Defendants AT&T Mobility LLC, Sprint Corp., Sprint Spectrum, L.P., T-Mobile USA, Inc., Cellco Partnership d/b/a Verizon Wireless, and Samsung Electronics Co., LTD., and Samsung Electronics America, Inc.'s (collectively, "Defendants") Motion to Dismiss, filed on April 16, 2015. (Doc. No. 141).[1] Plaintiff Orlando Communications LLC ("Plaintiff") filed a response in opposition, (Doc. No. 151), to which Defendants filed a reply, (Doc. No. 158), to which Plaintiff filed a surreply, (Doc. No. 165). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion to dismiss.

## I. BACKGROUND

The Court presumes the parties' familiarity with these related cases and therefore does not repeat the procedural background detailed in its prior Order. (Doc. No. 133 at pp. 2–4). On

---

[1] Unless otherwise indicated, all docket citations in this Order are to Case No. 6:14-cv-01017-Orl-22KRS. All references to the parties' motions and responses are to the actual page number on the CM/ECF docket and not to the page number on the parties' filings.

March 16, 2015, the Court entered an Order granting Defendants' then-pending motions to dismiss. (*Id.* at p. 24). In its Order, the Court permitted Plaintiff to amend its direct infringement claims as to one of the patents in these lawsuits; however, the Court dismissed the indirect infringement claims in Case Nos. 6:14-cv-01017-Orl-22KRS through 6:14-cv-01033-Orl-22KRS without leave to amend. (*Id.*). The Court further ordered the Clerk to terminate various defendants from these consolidated cases. (*Id.* at pp. 25–26).

Thereafter, Plaintiff filed its Second Amended Complaint. (Doc. No. 138). In conjunction with that filing, Plaintiff also filed a notice of voluntary dismissal as to certain defendants. (Doc. No. 139).

Plaintiff's Second Amended Complaint accuses Defendants of infringing U.S. Patent Nos. 6,009,553 (the "'553 Patent") and 6,857,196 (the "'196 Patent") (collectively, the "patents-in-suit"). (Doc. No. 138). Plaintiff alleges that it owns the '553 Patent (entitled "Adaptive Error Correction for a Communication Link"), (*id.* at ¶ 10), which relates to methods "of encoding and transmitting data over an established communications link" using error correction algorithms, (*see* Doc. No. 138-1 at p. 7). Plaintiff further alleges that it owns the '196 Patent (entitled "Range and Bearing Tracking System with Multipath Rejection"), (Doc. No. 138 at ¶ 39), which relates to "systems and methods for determining the range and bearing of [radiofrequency] signals in the face of multipath and similar noise sources," (*see* Doc. No. 138-4 at p. 5).

In Count I of the operative complaints, Plaintiff asserts claims of direct infringement as to the '553 Patent. Count II asserts direct infringement claims as to the '196 Patent. The only indirect infringement claims remaining in these cases are in the cases involving Samsung. *See* Case Nos. 6:14-cv-01623-Orl-22KRS through 6:14-cv-01626-Orl-22KRS. The matter being fully ripe for decision, the Court makes the following findings.

## II. LEGAL STANDARDS

Although Federal Circuit decisions provide much of the substantive law of patent disputes, regional circuit law governs purely procedural issues arising in patent cases. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). For purposes of deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id.*

## III. DISCUSSION

*A. Single-Actor Direct Infringement – the '553 Patent & the '196 Patent*[2]

A cause of action for direct infringement arises under 35 U.S.C. § 271(a), which provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention . . .

---

[2] Plaintiff does not appear to take issue with the fact the Defendants previously did not move to dismiss claims as to the '196 Patent. (Doc. No. 151 at p. 10). Instead, Plaintiff refers to its arguments discussing the '553 Patent to respond to Defendants' arguments. (*Id.*). The Court therefore will consider and address both patents-in-suit in this section.

during the term of the patent therefor, infringes the patent." Typically, "direct infringement requires a single party to perform every step of a claimed method." *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008) (citing *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007), and 35 U.S.C. § 271(a)). However, the Federal Circuit has also recognized claims of "joint direct infringement" by multiple actors: "[W]here the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" *Id.* (citation omitted); *see also Limelight Networks, Inc. v. Akamai Techs., Inc.*, ––– U.S. –––, 134 S. Ct. 2111, 2117, 189 L. Ed. 2d 52 (2014) (citing *Muniauction*, 532 F.3d at 1329–30).

1. Form 18 Applies to Plaintiff's Direct Infringement Claims

The Federal Circuit has previously held that whether a complaint has "adequately plead direct infringement is to be measured by the specificity required by Form 18." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012); *see also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007). Form 18 requires:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent 'by making, selling, and using [the device] embodying the patent'; (4) a statement that the plaintiff has given the defendant notice of its infringement; and (5) a demand for an injunction and damages.

*K–Tech Telecomm., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013) (citing *McZeal*, 501 F.3d at 1357).

Federal Rule of Civil Procedure 84 provides: "the forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Rule 84 and the Advisory Committee Notes show that "the proper use of a form contained in the Appendix of Forms effectively immunizes a claimant from attack regarding the sufficiency of the pleading."

*K–Tech*, 714 F.3d at 1283. Moreover, this immunizing effect is not altered by regional circuit law as the Federal Rules cannot be amended by judicial interpretation. *See id.* at 1283 n.1 ("Form 18 is a national form, and any argument that we should interpret it differently" based on circuit law "is without merit"). "[T]o the extent any conflict exists between *Twombly* (and its progeny) and the Forms regarding pleadings requirements, the Forms control." *Id.* at 1283.[3]

While, "[a] complaint containing just enough information to satisfy a governing form may well be sufficient under *Twombly* and *Iqbal*," *id.* at 1284, "Form 18 in no way relaxes the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device is being accused of infringement," *id.* "[A]n implausible claim for patent infringement rightly should be dismissed." *Id.* As the Federal Circuit has stated, in the end, "[t]he touchstones of an appropriate analysis under Form 18 are notice and facial plausibility" and although "these requirements serve as a bar against frivolous pleading, it is not an extraordinarily high one." *Id.* at 1286 (internal citations omitted). "The adequacy of the facts pled depends on the breadth and complexity of both the asserted patent and the accused product or system and on the nature of the defendant's business activities." *Id.*

2. "Joint" or "Divided" Infringement

What a mess we have here. The Court begins to untangle this knot by looking to Plaintiff's original response to the previous round of motion to dismiss briefing. In that filing, Plaintiff, citing absolutely no authority whatsoever, argued that Defendants directly infringe because they "remotely control" performance of certain steps of the accused patents. (Doc. No. 79 at pp. 8–9). Plaintiff's surreply also shed no light (factually or legally) on this obscure theory

---

[3] Because the Court does not entertain Plaintiff's divided infringement allegations, it need not address Defendants' argument that *Twombly* and *Iqbal* apply to them at the pleadings stage. (Doc. No. 141 at pp. 5–8).

of liability. (Doc. No. 87 at p. 4). In its previous Order, the Court noted the confusion surrounding Plaintiff's allegations and this theory. The Court stated that it agreed with Defendants that "[b]y its very nature, the 'remote control' theory implicates joint infringement and would require the Carriers to 'direct and control' the end users' operations of the handsets." (Doc. No. 133 at p. 10 n.10 (citing Doc. No. 84 at p. 8. n.4)). This may otherwise have been fine, had Plaintiff not expressly stated that it was <u>not</u> alleging joint infringement in these lawsuits. (Doc. No. 79 at pp. 7–8 n.8) ("Orlando does not allege joint infringement."). Because of Plaintiff's own statements, the Court noted in its previous Order that Plaintiff had disclaimed any theory of joint infringement. (Doc. No. 133 at p. 10 n.10). Even though the Court permitted amendment of Plaintiff's complaint in its prior Order, the Court specifically stated that "[t]he amended complaint shall not serve as an opportunity to add new claims." (*Id.* at p. 23). Despite this, Plaintiff now attempts to resurrect its previously disclaimed theory and add a joint infringement theory of liability through the current round of motion to dismiss briefing.

To elaborate further on the confusion, the Court turns to Plaintiff's opposition to the current motion to dismiss. (Doc. No. 151 at pp. 6–9). There, Plaintiff argues that Judge Bryson's opinion in *TQP Dev., LLC v. Intuit Inc.*, No. 2:12–CV–180–WCB, 2014 WL 2809841, at *10 (E.D. Tex. June 20, 2014), supports Plaintiff's "theory that all steps are performed by the Carrier, where each step happens within the Carrier's control." (Doc. No. 151 at p. 7). The problem with this argument is that *TQP* is a joint infringement case, involving multiple *actors*. This much is pointed out in Defendants' reply brief. (Doc. No. 158). As expressly admitted by Plaintiff, however, Plaintiff is not asserting a joint infringement theory of liability based on multiple actors. (Doc. No. 151 at p. 7) ("The Complaint . . . explicitly pleads *single-actor* direct infringement by the Carrier" (emphasis in original)).

By the time Plaintiff filed its surreply, it appears to have realized that it backed itself into a corner on the issue. In that filing, Plaintiff suggests that the Court should separate "joint infringement" and "divided infringement" into two separate theories of liability—the former requiring direction or control of multiple "actors" and the latter requiring direction or control of multiple "devices" or steps of a method claim. (Doc. No. 165 at pp. 2–3). This, of course, is a distinction without a difference: "joint" and "divided" infringement claims are one and the same. Indeed, many courts, including the Federal Circuit, appear to use the terms interchangeably. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 786 F.3d 899, 908–09 (Fed. Cir. 2015) (referring to "divided infringement case law"); *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013); *Golden Hour Data Sys. v. emsCharts, Inc.*, 614 F.3d 1367 (Fed. Cir. 2010) (referring to "joint infringement" where the combined actions of multiple parties are alleged to infringe); *Tech. Patents LLC v. T–Mobile (UK) Ltd.*, 700 F.3d 482 (Fed. Cir. 2012) ("In so ruling, the district court relied on this court's cases involving "joint" or "divided" infringement."). The foundation of each of these cases is still that one party "directs or controls" another party as set forth in *Muniauction*. *See* 532 F.3d at 1330 ("[T]he control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method.").

Plaintiff is correct that Judge Bryson's opinion in *TQP* is instructive. In that case, referring to "divided infringement," Judge Bryson addressed this situation where "the defendants perform the steps" involving generation and transmission of encrypted data, "while the clients perform the steps involving the receipt and decryption of the data." *TQP Dev., LLC*, 2014 WL 2809841, at *11. Indeed, at the beginning of his discussion, Judge Bryson acknowledges that

"the Federal Circuit has rejected claims of liability for infringement in cases in which '*several parties* have collectively committed the acts necessary to constitute direct infringement, but *no single party* has committed all of the required acts.'" *Id.* (citing *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012) (en banc), *rev'd on other grounds*, 134 S. Ct. 2111 (2014) (emphasis added)). However, the learned judge continued:

> That principle is subject to an exception for cases in which the *second party*, who performs some of the steps of a claimed method, is acting under the direction or control of the *first party*, who is charged with infringement. In that situation, every step is attributable to the controlling party.

*Id.* (citing *Muniauction,* 532 F.3d at 1329 (emphasis added)). Although the opinion referenced the fact that some steps are performed by defendants' servers while others are performed were performed by clients' computers, it is clear that Judge Bryson was addressing a joint infringement situation involving multiple actors, i.e., defendants and their clients, under *Muniauction*. This is not what Plaintiff alleges or attempts to allege in this case. (*See* Doc. No. 165 at p. 3) (arguing that a "single actor, the Carrier, performs or physically causes the performance of all of the claim steps through its direction and control of the devices that perform those steps."); (*see also* Doc. No. 79 at pp. 7–8 n.8) ("Orlando does not allege joint infringement.").

Of course, this may have all been avoided had Plaintiff simply provided legal authority for this theory in the first instance. (*See* Doc. No. 79 at pp. 8–9).[4] Then, Defendants and the Court may have realized what Plaintiff was attempting to allege. But it is simply too late now to

---

[4] There is no reason why Plaintiff could not have cited *TQP* as authority in *any* of its previous filings. Judge Bryson signed the *TQP* opinion on June 20, 2014, six days before Plaintiff filed its initial complaints in these cases. (*See* Doc. No. 1).

assert this previously disclaimed theory of joint or divided infringement, with the claim construction hearing approaching and the discovery deadline looming.[5]

3.  *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010)

The Court previously discussed the Federal Circuit's *SiRF* decision in its prior Order, noting that it need not decide the issues as presented because Plaintiff's claims failed for other reasons. (Doc. No. 133 at pp. 10–12). Today, the Court resolves the matter in Plaintiff's favor.

The parties disagree as to how the Court should interpret the *SiRF* decision. Plaintiff would have the Court read *SiRF* as establishing the following proposition: if an entity provides to an end user a device programmed to automatically perform a step of a method claim, then the law will attribute to that entity the use of that device to perform the step. In response, Defendants argue that *SiRF* establishes liability for a single-actor direct infringement where a party designed and built device components that performed later steps in a claim. While the law likely lies somewhere in between, the Court need only find today that Plaintiff's complaint satisfy the lenient standard of Form 18.

As stated in the Court's prior Order, in *SiRF*, the Federal Circuit affirmed the International Trade Commission's finding that SiRF Technology, Inc. ("SiRF"), a manufacturer of GPS systems, directly infringed asserted method claims. *SiRF*, 601 F.3d at 1331. The claims at issue in *SiRF* required some, but not all, of the steps of the claim to be executed by a satellite, which SiRF controlled. *Id.* at 1322. However, the remaining steps were "automatically

---

[5] Finally, inasmuch as Plaintiff continues to argue that Defendants employees' conduct constitutes infringement, the Court rejects this argument. Plaintiff claims that it is not a "new allegation" because it "explicitly argued this ground as an example of the Carrier's direct infringement on the previous motion . . . and in open court." (Doc. No. 151 at p. 13). This overlooks that, as mentioned as the hearing, there were no allegations in Plaintiff's previous complaint concerning employee conduct. The Court clearly stated that Plaintiff's amended complaint would not serve as an opportunity for Plaintiff to add new claims. (Doc. No. 133 at p. 23).

perform[ed]" by the accused GPS products, which the end-users had possession of. *Id.* at 1329–30. The Federal Circuit held:

> When properly construed, it is clear that SiRF infringes as its devices and software dictate the performance of the "processing" and "representing" steps. Once the technology is enabled, SiRF's SiRFstarIII chip and software, designed and built by SiRF, automatically perform the disputed steps of the claims at issue because the SiRFstarIII chips are programmed by SiRF to use the InstantFix ephemeris data automatically if it has been transmitted to the remote device. Neither SiRF's customers (the equipment manufacturers and software developers) nor the end users of the GPS receivers can modify the use of the EE files by SiRF's software or the functionality of the SiRFstarIII chip. Once the GPS receiver is enabled and ready to process the data, only SiRF's actions are involved in "processing" or "representing" the data.

*Id.* at 1331. The "designed and built" language in *SiRF* appears to go to the level of control that SiRF had over the processes—different than control over a second *party*—involved in that method patent. The holding in *SiRF* does not appear to require that a party must have "designed" and/or "built" the chips in the end product, e.g., the satellite in *SiRF*, to establish direct infringement. Indeed, Defendants provide the Court with no decision by any other court holding that liability under *SiRF* is limited to situations where an alleged infringer "designs and builds" similar transmitting devices. The court appeared to have been merely emphasizing the level of control that SiRF had over the chip's functionality. *See, e.g.*, *SimpleAir, Inc. v. Google Inc.*, 70 F. Supp. 3d 747, 758–59 (E.D. Tex. 2014). In any event, the current allegations for direct infringement across all the cases are sufficient under the lenient Form 18 standard. *See K–Tech*, 714 F.3d at 1283. These claims therefore will survive the pending motion to dismiss.[6]

---

[6] Because the arguments are identical, the '196 Patent direct infringement claims fail (as to joint infringement) and succeed (as to *SiRF*) for the same reasons outlined in this section. Moreover, since Plaintiff sufficiently alleged direct infringement of the patents-in-suit, the Court rejects Defendants' argument that all indirect infringement claims must be dismissed for failure to adequately plead direct infringement. (Doc. No. 141 at p. 32).

B. *Samsung Indirect Infringement – the '196 Patent & the '553 Patent* [7]

Patent infringement can also occur indirectly. 35 U.S.C. § 271. While, direct patent infringement requires "no more than the unauthorized use of a patented invention," *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. ––, ––, 131 S. Ct. 2060, 2065 n.2, 179 L. Ed. 2d 1167 (2011), indirect infringement, on the other hand, boils down to "the aiding and abetting of direct infringement by another party," *id.* at 2067.

Indirect infringement can take two forms under § 271. *Id.* First, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Second,

> [w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented [invention] . . . constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

*Id.* at § 271(c).

Although direct infringement is a strict liability violation, *Global-Tech*, 131 S. Ct. at 2065 n.2, indirect infringement requires "at least some intent," *id.* at 2065. The Supreme Court previously held, in the context of § 271(c) only, that a violator must know "that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488, 84 S. Ct. 1526, 12 L. Ed. 2d 457 (1964). More recently, the Supreme Court adopted the same standard—that a defendant must possess knowledge of both the patent's existence and the infringing nature of the induced act(s)—with respect to alleged violations of § 271(b). *Global-Tech*, 131 S. Ct. at 2067–68 (". . . §

---

[7] The Court summarily rejects Defendants' argument that all indirect-infringement allegations must be dismissed for failure to adequately plead pre-suit knowledge. (*Id.* at p. 23). Although it is not completely clear why Plaintiff would change these allegations after the Court previously found them sufficient, the Court finds that the current complaints still meet *Twombly* and *Iqbal*'s pleading standards for pre-suit knowledge.

271(c) requires knowledge of the existence of the patent that is infringed . . . . Based on this premise, it follows that the same knowledge is needed for induced infringement under § 271(b) . . . . Accordingly, we now hold that induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement.").

1. Induced and Contributory Infringement

Unlike claims for direct infringement, when alleging claims for indirect infringement, a plaintiff must satisfy the heightened pleading requirements set forth in *Iqbal* and *Twombly*. *In re Bill of Lading*, 681 F.3d at 1336–37 (stating that "Form 18 should be strictly construed as measuring only the sufficiency of allegations of direct infringement, and not indirect infringement[,]" which should be measured according to *Twombly* and *Iqbal*).

"Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita–Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009). Therefore, to state a claim for induced infringement, Plaintiff must plead facts to raise the plausible inference that (1) a defendant knowingly induced a third party to perform specific acts; (2) the defendant specifically intended for the induced acts to infringe the patent; and (3) as a result of the inducement, the third party directly infringed the patent. *See DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006). To state a claim for contributory infringement, the patent owner must plead the following: (1) an offer to sell, sale, or import; (2) a component or material for use in a patented process constituting a material part of the invention; (3) knowledge by the defendant that the component is especially made or especially adapted for use in an infringement of such patents; and (4) the component is not a staple or article suitable for substantial noninfringing use. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir.

2010) (citing 35 U.S.C. § 271(c)). Further, a defendant "must know 'that the combination for which his component was especially designed was both patented and infringing.'" *Global–Tech*, 131 S. Ct. at 2067 (citing *Aro Mfg. Co.*, 377 U.S. at 488).

Taking the allegations in the light most favorable to Plaintiff, the Court finds that the Samsung complaints sufficiently allege induced and contributory infringement under *Iqbal* and *Twombly*. Insofar as Defendants argue that Plaintiff did not materially change its allegations, (*see, e.g.*, Doc. No. 141 at p. 26–27), the Court somewhat agrees. However, in dismissing the claims previously, the Court noted that Plaintiff had effectively conceded the argument because of its failure to adequately respond and defend against the previous motions to dismiss. Here, Plaintiff has done so, (Doc. No. 151 at pp. 10–15), and in a manner in which the Court finds satisfies *Twombly* and *Iqbal*. Of course, whether Plaintiff can ultimately prove these claims remains to be seen. Many of the arguments Defendants raise involve factual questions that may be resolved at summary judgment, after discovery and with the benefit of a fully developed factual record.

## IV.  CONCLUSION

Therefore, based on the foregoing, it is **ORDERED** as follows:

1. Defendants AT&T Mobility LLC, Sprint Corp., Sprint Spectrum, L.P., T-Mobile USA, Inc., Cellco Partnership d/b/a Verizon Wireless, and Samsung Electronics Co., LTD., and Samsung Electronics America, Inc.'s Motion to Dismiss, filed on April 16, 2015 (Doc. No. 141), is **GRANTED** in part and **DENIED** in part.

   a. The motion is granted to the extent Plaintiff attempts to re-inject previously disavowed joint infringement claims; it is denied in all other respects.

**DONE** and **ORDERED** in Orlando, Florida on August 14, 2015.

_____
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties